J-S91030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN MAURICE MCDONALD | |
| Appellant | No. 680 MDA 2016 |

Appeal from the Judgment of Sentence March 8, 2016
in the Court of Common Pleas of Dauphin County
Civil Division at No(s): CP-22-CR-0003708-2015

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY RANSOM, J.:                    **FILED MARCH 10, 2017**

Appellant, John Maurice McDonald, appeals from the judgment of sentence of life imprisonment without parole plus two to four years of incarceration to be served concurrently.  This sentence was imposed following a jury trial resulting in convictions of first degree murder and carrying a firearm without a license.[1]  We affirm.

In May 2015, Appellant was at Forever Nights, an after-hours establishment in Dauphin County, with Kahadeeja Asia Bethea ("Ms. Bethea") and her cousin, Shanelle Franklin ("Ms. Franklin").  Notes of Testimony (N.T.), 3/7-8/16 at 86-87, 211-13, 216-18, 223.  Ms. Franklin said something Appellant did not like, the two began to argue, and Appellant

---

[1] ***See*** 18 Pa.C.S. § 2502 and 6106(a)(1), respectively.

* Former Justice specially assigned to the Superior Court.

pushed her by placing his open hand on her face.[2]  *Id*. at 87-88, 223.  Ms. Franklin walked away and returned shortly thereafter with a security guard of the establishment, B.J., who was accompanied by a patron of the establishment, Todd Dunlap ("Mr. Dunlap").  *Id*. at 88, 224, 226.

B.J. and Mr. Dunlap attempted to get Appellant to leave and explained, "You've got to go. . .  You can't be in here putting your hands on women. It's early, [you're] already starting."  *Id*. at 88-89.  Appellant responded, "I ain't going no F-ing where."  *Id*.  B.J. and Mr. Dunlap attempted to calm Appellant down and when Appellant resisted, Mr. Dunlap tried to restrain Appellant.  *Id*.  Appellant then pulled out a gun and hit Mr. Dunlap on the head, causing Mr. Dunlap to fall on the ground.  *Id*. at 89-90.  Appellant walked over to Mr. Dunlap, who was still on the ground, and fired a single shot to the back of Mr. Dunlap's head.  *Id*.  Appellant then stepped over Mr. Dunlap, walked out of the establishment, got in his car, and drove away. *Id*. at 90, 110-11, 223-24.  Mr. Dunlap died as a result of the gunshot wound.  *Id*. at 90-91.  Mr. Dunlap was unknown to Appellant.  *Id*. at 233-34.  Appellant did not have a license to carry a firearm.  *Id*. at 237.

At trial, Appellant presented a defense of voluntary intoxication. Appellant testified that, in the two days prior to going to the bar that night, he had not slept and had consumed large amounts of alcohol and ecstasy.

_____

[2] Ms. Franklin described this action by stating that Appellant "mushed" her in the face.  *Id*. at 88.

N.T. at 227-30. Appellant further testified that he took multiple ecstasy pills immediately before entering Forever Nights and that he had smoked a cigarette dipped in embalming fluid earlier in the evening. *Id*. at 227-30, 232, 236. Ms. Bethea testified that she accompanied Appellant to two bars prior to their arrival at Forever Nights and Appellant was talking without making sense. *Id*. at 214-15. Ms. Bethea witnessed Appellant take the ecstasy before entering Forever Nights. *Id*. at 215-16. Appellant's cousin, Mariah Selvey ("Ms. Selvey"), who was also at the establishment on the night of the incident, testified on cross-examination that Appellant was extremely intoxicated and "real, real high". *Id*. at 195-202. Ms. Selvey testified that prior to arriving at the establishment, she and Appellant were drinking and taking ecstasy pills. *Id*. at 197-98.

Ms. Bethea, Ms. Franklin, and Ms. Selvey identified Appellant as the shooter. *Id*. at 90, 195, 224. Ms. Franklin testified that Appellant did not lose his balance while swinging the gun at Mr. Dunlap and observed that Appellant did not slur his words while arguing with her. *Id*. at 94-95. The D.J. at the establishment that night, Abraham Reese, testified that Appellant was standing on his own, without assistance, while arguing with Ms. Franklin. *Id*. at 79.

Following a two-day trial in March 2016, Appellant was convicted of first degree murder and carrying firearms without a license. Appellant was sentenced to life imprisonment without parole for the murder charge, and two to four years of imprisonment for the firearm charge, to be served

concurrently. Appellant timely filed post-sentence motions, which were denied by the trial court. Appellant timely appealed and subsequently filed a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The lower court did not issue an opinion.

Appellant raises the following issue for our review:

1. DID NOT THE LOWER COURT ABUSE ITS DISCRETION BY FAILING TO GRANT [APPELLANT] A NEW TRIAL ON THE BASIS THAT THE GUILTY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE WHEN THE TOTALITY OF THE EVIDENCE AS TO THE ISSUE OF [APPELLANT'S] VOLUNTARY INTOXICATION WAS UNRELIABLE, CONTRADICTORY, AND INCREDIBLE?

Appellant's Brief at 4.

Appellant argues his conviction for first degree murder was against the weight of evidence as his intoxication should have lowered his level of culpability to third degree murder instead. Appellant's Brief at 15-20. Specifically, the Appellant asserts that the Commonwealth did not meet its burden to refute Appellant's intoxication defense. *Id*. The following principles apply to our review of a weight of the evidence claim:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 741 A.2d 666, 672-73 (Pa. 1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the

- 4 -

evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003), *cert. denied*, 542 U.S. 939, (2004) (most internal citations omitted). A trial court's denial of a post-sentence motion based on a weight of the evidence claim is the least assailable of its rulings. ***Commonwealth v. Nypaver***, 69 A.3d 708, 717 (Pa. Super. 2013) (internal quotations omitted) (citing ***Commonwealth v. Sanders***, 42 A.3d 325, 331 (Pa. Super. 2012).

In order for a jury to find a defendant guilty of murder of the first degree, "the Commonwealth must prove, beyond a reasonable doubt, that a human being was lawfully killed, that the accused was responsible for the killing, and that the accused acted with a specific intent to kill." ***Commonwealth v. Pagan***, 950 A.2d 270, 279 (Pa. 2008); ***see also*** 18 Pa.C.S. § 2502(a). Specific intent to kill may be inferred from the use of a deadly weapon to inflict injury on a vital part of the body. ***Pagan***, 950 A.2d at 279; see also 18 Pa.C.S.A. § 2301.

This Court has previously made clear that a defense of diminished capacity grounded in voluntary intoxication is a very limited defense, which does not exculpate the defendant from criminal liability, but, if successfully advanced, mitigates first degree murder to third degree murder. ***Commonwealth v. Hutchinson***, 25 A.3d 277, 312 (Pa. 2011). The mere fact of intoxication is not a defense; rather, the defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised by voluntary intoxication that he was unable to formulate the specific intent

to kill. *Id*. In other words, to prove a voluntary intoxication defense, the defendant must show that he was "overwhelmed to the point of losing his faculties and sensibilities." *Id*. (quoting *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2008); *see also Commonwealth v. Collins*, 810 A.2d 698, 701 (Pa. Super. 2002) (concluding, generally, defendant has the burden of proving the defense by a preponderance of the evidence when a defense is asserted that relates to the defendant's mental state or to information that is peculiarly within the defendant's own knowledge and control.). In response, the Commonwealth need not "disprove a negative." *Commonwealth v. Rose*, 321 A.2d 880, 884 (Pa. 1974). Although the Commonwealth retains the burden of persuasion, "[o]nce a defendant has come forward with [evidence of his intoxication], ... the Commonwealth ... may introduce testimony to refute it, but is under no duty to do so." *Id*.[3]

Herein, balanced against testimony describing Appellant's use of alcohol and ecstasy, the Commonwealth proffered evidence that Appellant (1) was responsive to Mr. Dunlap, (2) did not slur his words during his argument with Ms. Franklin, (3) managed to walk over Mr. Dunlap's body to

---

[3] Appellant has erroneously suggested that it is "the Commonwealth's burden to disprove the elements" of his voluntary intoxication defense. *See* Appellant's Brief at 15-16 (citing in support *Rose*, 321 A.2d at 884). To the contrary, the *Rose* Court noted specifically that "the Commonwealth has an *unshifting* burden to prove beyond a reasonable doubt all elements of the crime." *Rose*, 321 A.2d at 884 (emphasis added). This burden is unaltered by Appellant's intoxication defense. *Id*.

exit the establishment, and (4) drove himself away following the murder. The jury was free to believe all, part, or none of this evidence. ***Small***, 741 A.2d at 672. The court instructed the jury to consider Appellant's defense. ***See*** N.T. at 269-71. Clearly, however, the jury determined that the Commonwealth's evidence established the requisite, specific intent to kill. ***Rose***, 321 A.2d at 884.

Implicit in denying Appellant's challenge to the weight of the evidence, the court concluded that the verdict did not "shock one's sense of justice." ***Small***, 741 A.2d at 672. We discern no palpable abuse of discretion in this regard. ***Champney***, 832 A.2d at 408.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2017