492 A.2d 32

**COMMONWEALTH of Pennsylvania**

v.

**Isaac WHITE, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 28, 1984.

Filed April 19, 1985.

2

Lawrence F. Flick, Norristown, for appellant.

J. William Ditter, III, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before WIEAND, MONTEMURO and CERCONE, JJ.

CERCONE, Judge:

This appeal arises from an Order of the Court of Common Pleas of Montgomery County denying Mr. White's ("appellant") Motions for New Trial and In Arrest of Judgment, thus affirming his conviction of Defiant Trespass.

The Act under which the appellant was charged and found guilty, 18 Pa.C.S.A. § 3503(b), provides:

(b) Defiant trespasser.—

(1) A person commits an offense if knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; . . .

Section 3503 provides certain defenses to a charge of defiant trespass. Subsection (c) states:

(c) Defenses.—It is a defense to prosecution under this section that:

. . . . .

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; . . .

On appeal, appellant asserts (1) that the facts in this case support his § 3503(c)(2) statutory defense and, as a related claim, (2) that the facts show a denial of his rights guaranteed under the Pennsylvania Constitution Article I, §§ 1, 7, and 20 and the Constitution of the United States Amendments 1, 5 and 14.

■ When testing the sufficiency of the evidence, a reviewing court must view all of the evidence in the light most favorable to the verdict winner and give that party the benefit of all reasonable inferences therefrom. *Common-*

*wealth v. Speller*, 311 Pa.Super.Ct. 569, 458 A.2d 198 (1983). The weight to be given to the evidence is for the trier of fact. *Commonwealth v. Carter*, 272 Pa.Super.Ct. 411, 416 A.2d 523 (1979). The facts as found by the court below are supported by the record and it is upon these facts that we base our opinion.

On December 7, 1982, the appellant was terminated as an employee of the Ford Aerospace Plant in Upper Gwynedd Township, Montgomery County ("Ford"). He was told that if he wished to be reinstated, he would have to take a medical leave of absence. He was given until twelve noon, December 9, 1982, to make a decision. Around 7:00 a.m., December 8, 1982, appellant entered the plant and was immediately told to leave, which he did. Later the same morning, appellant was prevented from reentering the plant by a guard at the south gate. The guard asked appellant to leave and he refused. The Upper Gwynedd Township police were contacted and Sergeant Freed responded. After consultation with management personnel of the Ford plant, the sergeant asked appellant to leave the premises. Appellant stated that he would not leave until he spoke with Ms. Rice, the company's Senior Labor Relations Representative who had terminated his employment and given him the previously stated option. Ms. Rice was called and she went down to the guard's station. The content of the conversation between appellant and Ms. Rice pertained to whether or not he was officially requesting medical leave. Their discussion was inconclusive and Ms. Rice asked the appellant to leave. Sergeant Freed testified that he also told the defendant to leave at this time.

Defendant got into his car and drove it toward the guard station, parked the car in a travel lane, and got out to speak with a union steward and other employees who were leaving the plant for lunch. He testified that he asked them to go inside to get a certain medical form for him. Parenthetically, in his conversation with Ms. Rice, appellant had requested and not received this medical form. A few minutes later, Sergeant Freed again told appellant to leave

and, upon his refusal, arrested appellant for defiant trespass. Based on this entire series of events, the court below found appellant to be guilty of defiant trespass.

Upon beginning our discussion, we note that appellant was asked to leave the premises at three different points in time prior to his arrest and each time he refused to obey. The first time was prior his request to speak with Ms. Rice. The second time was following his conversation with Ms. Rice at which point he did leave the guard station and went to his parked car in the adjacent parking lot. The third time was after he had stopped his car near the gate and had spoken with a union steward and other egressing employees.

An understanding of the activities that normally occur at the south gate guard house is essential to our holding. The court below made no findings of fact on this point. Therefore, we will note the Commonwealth's uncontradicted testimony. On cross-examination, Mr. Bieler, Security and Safety Supervisor at the plant, testified that the south gate is one of two main entrances to the plant building for hourly employees, visitors, business invitees, customers, job applicants and retirees seeking medical information. On cross-examination, Ms. Rice responded "yes" to the question whether it was normal for employees or dependents of employees and retirees to come to the plant, at the south gate, to request medical forms. She further responded in the affirmative to a question whether she had instructed the appellant to wait for her at the guard's station. She also testified that it was customary for members of the public, as well as employees, and other people with business at the plant to wait at the south gate guard station area until they state their business and are invited into the plant.

The court below did not find, nor would the record support such a finding, that the appellant's conduct, though annoying to the employer, was either obstructive, abusive, or destructive. There is no evidence that the appellant was causing a breach of the peace except that he did not leave

the premises immediately upon the request of Ford's agents to do so.

Subsection (c)(2) of § 3503 provides an affirmative defense to a charge of defiant trespass. This statute is an adoption of Model Penal Code § 221.2, 10 Uniform Laws, Ann., Master Edition § 221.2. The notes to the Proposed Official Draft of the Model Penal Code, § 221.2, provide insight into the purpose of this statutory defense. The notes state, in pertinent part:

> The primary objective is to exclude criminal prosecution for mere presence of a person in a place where the public generally is invited. Persons who become undesirable by virtue of disorderly conduct may of course be prosecuted for that offense. The Section is not intended to preclude resort by the occupant to civil remedies for trespass, including his privilege, whatever it may be, of barring entry or ejecting.[1]

No reported decision in Pennsylvania has dealt directly with the scope and purpose of a subsection (c)(2) defense except insofar as a claimant's political free speech rights were involved. *Commonwealth v. Tate*, 495 Pa. 158, 432 A.2d 1382 (1981). In *Tate*, the Pennsylvania Supreme Court overturned convictions for defiant trespass stemming from the defendants' refusal to desist from distributing politically oriented materials in a peaceful manner on the campus of a privately owned college. In that case, the court found that the college had created a public forum by opening the campus to the public to hear the then director of the Federal Bureau of Investigation to speak in a campus building.

■ A finding of state action is not necessary for a defendant to seek protection in the subsection (c)(2) defense. Nor need we discuss appellant's constitutional free speech rights. This statutory defense merely requires that the

---

1. We note that before this issue was codified, Pennsylvania recognized criminal trespass to property at common law if the circumstances constituted a breach of the peace. *Commonwealth v. Taylor*, 5 Binney 277.

defendant be in a place open to the public and that he comply with all lawful conditions imposed on access to or remaining on the premises. The south gate area was open to the public for limited purposes already mentioned. Appellant was present at that gate for the explicit purpose for which the area was open. That is, he was first seeking to speak with a Ford management employee and, after that effort was apparently fruitless, he sought to speak with a union steward who was walking out through the gate.

 The statutory defense in section 3503(c)(2) provides a defendant with an affirmative defense. An affirmative defense is defined as one where the defendant admits his commission of the act charged, but seeks to justify or excuse it. *Commonwealth v. Rose,* 457 Pa. 380, 387, 321 A.2d 880 (1974). When evidence is introduced which raises an issue relating to an affirmative defense, the burden of proof falls on the Commonwealth to disprove the defense. 2 Pa. Criminal Practice § 26.10 (Wasserby, Ed.1981). *See Commonwealth v. Cartagena,* 482 Pa. 6, 23, 393 A.2d 350, 359 (1978).[2] This is because the truth of all affirmative defenses goes to the final analysis of the guilt and the rightness of punishing the accused. Therefore, at the close of the evidence, the jury must be told that if they have a reasonable doubt of the element thus raised they must acquit.

 In this case, the defendant did present sufficient evidence to show that the gate area, where the events occurred, was open to the public for the specific purposes for which the defendant was in that area. The Commonwealth presented no evidence that the defendant failed to comply with any lawful condition imposed on his access to those premises or in any other way "breached the peace".

**2.** In *Commonwealth v. Rose, supra,* the Supreme Court adopted this burden of proof for all affirmative defenses. Previously, Pennsylvania defendants had the burden of proving by a preponderance of the evidence the facts relating to an affirmative defense. By placing the burden on the Commonwealth, the court was adopting a standard consistent with the constitutional requirement that the state must convince the jury of each element of a crime.

8

The mere fact that his invitation to be on the premises was revoked is not sufficient to remove the defendant from the protection of subsection (c)(2). To find otherwise would render that subsection meaningless.

■ To permit the use of the criminal process to effectuate what is basically a civil cause of action for relief would be unjust. Although the facts in this case and the $40.00 fine involved may seem insignificant, the principle is elemental to maintaining a proper perspective on the distinction between criminal and civil trespass actions. The purpose of the criminal trespass statute is to prevent unlawful intrusion onto real property or remainder thereon or to prevent unlawful breaches of the peace relating to realty. Because appellant had complied with all "lawful conditions" for access to the premises, 18 Pa.C.S.A. § 3503(c)(2), his conviction may not stand.

Reversed.