J-S35038-23

2023 PA Super 234

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN ALBERT POWANDA | : | |
| | : | |
| Appellant | : | No. 559 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 29, 2023
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0001424-2022

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED: NOVEMBER 9, 2023**

Appellant, Justin Albert Powanda, appeals from a probationary judgment of sentence that the Court of Common Pleas of Schuylkill County imposed after a jury found him guilty of defiant trespass and the court found him guilty of disorderly conduct.[1]  He challenges the denial of his motion to dismiss the trespass charge based on the statutory defense at 18 Pa.C.S. § 3503(c)(2), that he made at the close of the Commonwealth's case-in-chief.  Upon review, we affirm.

The trial court summarizes the relevant facts of the instant case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3503(b)(1)(i) and 5503(a)(1), respectively.

[Appellant] was charged with the crimes as a result of his conduct on February 9, 2022 at the A2Z Smoke Shop in Schuylkill Haven, Schuylkill County. The Commonwealth presented Heather Smith, manager of the shop, and Officer Michael Bucek of the Schuylkill Haven Police Department as witnesses at trial. [Appellant] testified in his own defense.

According to Smith, she had been at the shop working as its manager on February 9, 2022. Smith contacted the police at about 4:45 p.m., and stated that [Appellant] was no longer allowed at the shop due to an incident that had occurred earlier in the day. About an hour and twenty minutes later, [Appellant] called Smith, and she told him that he was not allowed to enter the store due to his conduct in the store. During the phone call, Smith stated, "he was out of control, kind of yelling at me." Nevertheless, at 6:45 p.m., [Appellant] entered the store while Smith and a customer were present.

Smith told [Appellant] to leave, but [Appellant] refused. Smith described [Appellant] as "angry, sweaty, kind of out of control." Smith felt intimidated by [Appellant], who was inside the store with the door closed. After [Appellant] refused to leave the store and Smith had told him to do so five to ten times, Smith called 911, and directed the customer to go into another room. According to Smith, [Appellant] "was threatening me, telling me I didn't know who he was, he knew what time the store closed, that I was going to get it,…" Smith indicated that [Appellant] was yelling, red, and sweaty. She testified, "[Y]ou don't know what's going to happen in that situation." While Smith was on the phone with 911, she continued to tell [Appellant] to leave but he refused. However, prior to the police arrival, [Appellant] left the shop.

Officer Bucek testified that while he was on duty for the Schuylkill Haven Police Department on February 9, 2022, he went to the shop in response to a dispatch of a disorderly male who had broken a button on a skills machine. Upon arrival at the shop, Bucek was told by Smith that [Appellant] was the person in question, but that he had left the store. Bucek went to [Appellant's] home to advise him not to go to the shop, however, no one answered the door to the home.

About one hour later, Bucek received another call that [Appellant] was at the shop again. Upon Bucek's arrival at the shop, [Appellant] was gone. The next day [Appellant] called Bucek and

asked if he was allowed to go to the shop. The officer told [Appellant] that [Appellant] knew he could not be there, to which [Appellant] responded, "Yeah, but I went anyway."

[Appellant] testified that he had been at the shop in the morning of February 9, 2022, playing a skills machine that had a broken button but that he had not damaged the button. Sometime later in the day, [Appellant] claimed that he saw the police talking to his girlfriend. Based upon what his girlfriend told him, [Appellant] thought he had to return to the shop to replace the button even though he had not damaged it. As a result, he called the shop and told Smith he was coming to the store to "straighten it out." After about an hour, [Appellant] returned to the shop, told Smith that he did not break the button, wanted to see some proof, and speak to the boss. According to [Appellant], Smith "got frantic right away," "said about leaving," and "(w)e're calling the cops." [Appellant] claimed that he told her to call the police, that he wanted them to come so he could "work this out." Since the police did not arrive after three to four minutes, however, [Appellant] stated he went home.

Trial Court Opinion, 5/23/23, 2-4 (record citations omitted).

On March 8, 2023, Appellant proceeded to be tried by a jury on the trespass charge and tried by the lower court on the disorderly conduct charge, and he was found guilty of both offenses. After the close of the Commonwealth's case-in-chief during the jury trial, defense counsel unsuccessfully made an oral motion to dismiss the trespass charge based on the statutory defense at 18 Pa.C.S. § 3503(c)(2):

[DEFENSE COUNSEL]: I want to move for a judgment of acquittal based on the Commonwealth's evidence, Your Honor. Regarding the defiant trespasser charge that we are here for, there is an affirmative defense stated in Subsection C, No. 2. It says that the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in premises.

- 3 -

My argument is this: This is a place open to the public. They are not allowed, pursuant to the section I just read, to basically tell somebody they are forever barred from this location. I grant you that --

THE COURT: Where do you find that law?

[DEFENSE COUNSEL]: By the fact that they have -- wording of this section implies that they could ask somebody to leave the premises based on their actions occurring at that time at the premises, but the direction has to be given upon those circumstances.

And the testimony was that as soon as he walked through the door before he engaged in any type of behaviors that the store clerk found intimidating, he had already been ordered out of the premises at that point in time even though he hadn't done anything yet. And I don't think that somebody under those circumstances could be charged with a misdemeanor defiant trespasser. That's my first argument.

My second argument is that the Commonwealth never established that Ms. Smith was an authorized person who had the authority to order a customer at this place open to the public out of the premises; that she was ever given that as a job duty; that the owners acquiesced in this authority in any way, shape, or form. And I think that the direction to leave has to come from an authorized person, and there was no establishment that Ms. Smith was authorized to make that directive.

THE COURT: There was no testimony specifically on that point. However, your motion is denied.

N.T. 3/8/23, 28-29.[2] On March 29, 2023, the court sentenced Appellant to twelve months' probation for defiant trespass and a $10 fine for disorderly

_____

[2] Appellant's claim on appeal is not based on the "second argument" raised in the motion for judgment concerning whether Ms. Smith had the authority as the store manager to order Appellant to leave the smoke shop. That argument also appeared to be premised on the statutory defense at 18 Pa.C.S. §
*(Footnote Continued Next Page)*

- 4 -

conduct. Order, 3/29/23, 1; N.T. 3/29/23, 20, 22-23. Appellant thereafter timely filed a notice of appeal and a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925.[3] Notice of Appeal, 4/13/23, 1; Rule 1925(b) Order, 4/14/23, 1; Rule 1925(b) Statement, 4/27/23, 1.

On appeal, Appellant presents the following question for our review:

Whether the Commonwealth failed as a matter of law to overcome the defense stated in 18 [Pa.C.S. §] 3503(c)(2) due to [Appellant] having been ordered to leave the premises, which was open to the public at the time, before he committed any act justifying his removal from the premises, and whether the [t]rial [j]udge committed an error of law by overruling a defense [m]otion to [d]ismiss on this ground at the close of the Commonwealth's case-in-chief?

Appellant's Brief at 5 (suggested answer and numbering omitted).

Based on the form of the question presented, Appellant appears to be claiming that the trial court erred by rejecting his motion for judgment of acquittal that asserted his claim based on the Section 3503(c)(2) defense. He argues that, at his 6:45 p.m. return to the smoke shop, he was told to leave the store immediately upon his entry before engaging in any behavior justifying his removal and that he could not be removed from the store at that

_____

3503(c)(3), rather than the defense at Section 3503(c)(2) which is the focus of the claim before us. **See** 18 Pa.C.S. § 3503(c)(3) ("It is a defense to prosecution under this section that … the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain.").

[3] We note that the Commonwealth did not file a Brief for Appellee.

time for his prior behavior earlier in the day. Appellant's Brief at 8. Based on this reasoning, he concludes that the statutory defense to defiant trespass at Section 3503(c)(2) should have applied and rendered the evidence insufficient to support his trespass conviction. *Id.* at 8-9.

"A defendant may challenge the sufficiency of the evidence to sustain a conviction," *inter alia*, in "a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief." Pa.R.Crim.P. 606(a)(1).[4] "The test for ruling upon a [motion for judgment of acquittal] is whether 'the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged.'" ***Commonwealth v. Stewart***, 450 A.2d 732, 735 (Pa. Super. 1982), ***citing Commonwealth v. Finley***, 383 A.2d 1259, 1260 (Pa. 1978); ***see also Commonwealth v. Sunealitis***, 153 A.3d 414, 420 (Pa. Super. 2016) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.").

Even though Appellant presented his sufficiency claim to the trial court in his motion for judgment of acquittal, the trial court's review of the claim is immaterial for purposes our review. "The determination of whether sufficient

---

[4] The presentation of such a motion during the course of trial is unnecessary to preserve an appellate challenge to the sufficiency of the evidence. ***See*** Pa.R.Crim.P. 606(a)(7) (a defendant may challenge the sufficiency of the evidence in "a challenge to the sufficiency of the evidence made on appeal").

evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Edwards***, 177 A.3d 963, 969 (Pa. Super. 2018) (citation omitted). Upon sufficiency review, we evaluate "whether viewing all the evidence admitted at trial [ ] in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Stiles***, 143 A.3d 968, 981 (Pa. Super. 2016) (brackets in original; citation omitted). This Court may not substitute its own judgment for that of the fact-finder. ***Id.*** (citation omitted).

Appellant was convicted of defiant trespass pursuant to 18 Pa.C.S. § 3503(b)(1)(i). Bills of Information, 12/1/22, 1; Order, 3/8/23, 1. That subsection provides: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by … actual communication to the actor." 18 Pa.C.S. § 3503(b)(1)(i). This crime requires an intentional *mens rea* and, to establish the crime under that subsection, "the Commonwealth must prove that a defendant (1) entered or remained upon property without a right to do; (2) while knowing that he had no license or privilege to be on the property; and (3) after receiving direct or indirect notice against trespass." ***Commonwealth v. Bradley***, 232 A.3d 747, 758 (Pa. Super. 2020). "The purpose of the criminal trespass statute is to prevent unlawful intrusion onto real property or remainder thereon or to prevent unlawful breaches of the

peace relating to realty." ***Commonwealth v. White***, 492 A.2d 32, 36 (Pa. Super. 1985).

The statutory defense relied on in Appellant's claim provides: "It is a defense to prosecution under [Section 3503] that … the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises[.]"  18 Pa.C.S. § 3503(c)(2).  Concerning the purpose of this defense, we have observed:

> [Section 3503] is an adoption of Model Penal Code § 221.1, 10 Uniform Laws, Ann., Master Edition § 221.1.  The notes to the Proposed Official Draft of the Model Penal Code § 221.2, provide insight into the purpose of th[e Section 3503(c)(2)] statutory defense.  The notes state, in pertinent part:
>
>> The primary objective is to exclude criminal prosecution for mere presence of a person in a place where the public generally is invited.  Persons who become undesirable by virtue of disorderly conduct may of course be prosecuted for that offense.  The Section is not intended to preclude resort by the occupant to civil remedies for trespass, including his privilege, whatever it may be, of barring entry or ejecting.

***White***, 492 A.2d at 35 (footnote omitted).  The Section 3503(c)(2) defense is an affirmative defense such as "one where the defendant admits his commission of the act charged, but seeks to justify or excuse it." ***White***, 492 A.2d at 35.

Arguing for the applicability of this defense, Appellant asserts, "A member of the public can be removed from a store for behavior being engaged in at the time of removal, but not for prior behavior."  Appellant's Brief at 8.

He alleges that a "prior incident was not a 'lawful condition' barring [his] re-entry [at the A2Z Smoke Shop] at a future time." *Id.* at 9.

Appellant cites no precedent to support his argument that the Section 3503(c)(2) defense applies when someone refuses to leave a business open to the public after the business had previously told the person that they were not allowed to reenter the business based on their past conduct at the business. Our caselaw does not support his position. As noted *supra* in **White**, the defense is not intended to preclude a defiant trespass prosecution where an owner or occupant of property has barred entry to those who have previously engaged in unlawful breaches of the peace on their property. Appellant was not prosecuted for his mere presence in a public place. His permission or license to return to the A2Z Smoke Shop was revoked because he had acted out of control and had been yelling at the store manager during the incident which made the store manager initially contact the police about him at 4:45 p.m. on the day in question. Appellant then returned to the store at 6:45 p.m. after the manager had told him in a phone call that he was not allowed to enter the store based on his conduct that day. He then continued yelling at the store manager and refused five to ten commands from the manager to leave the store. Appellant's decision to reenter the premises after being barred from reentering the store and remaining there against the manager's repeated commands to leave constituted defiant trespass.

Appellant's *mens rea* for the offense was amply established when, after being told the next day by the police that he knew that he could not be there,

he responded, "Yeah, but I went anyway." **See Commonwealth v. Conyers**, 357 A.2d 569, 389 (Pa. Super. 1976) (*en banc*) ("The crime of defiant trespass occurs when a person remains in a place where he is not privileged to remain after notice of trespass is given."); **Commonwealth v. Davis**, 17 A.3d 390, 398 (Pa. Super. 2011) ("[T]he crime of defiant trespass merely requires that a person enter a place with knowledge of a lack of license or privilege to do so.").

The evidence in this case was sufficient to rebut Appellant's assertion of the affirmative defense under Section 3503(c)(2) that was based on a faulty premise. If Appellant's theory was correct that defiant trespass could not be premised on a defendant reentering a store after being formerly barred from the establishment based on prior conduct then the statutory defense in question would not refer to the "lawful conditions imposed on access" and instead would only refer to the conditions for remaining on premises. 18 Pa.C.S. § 3503(b)(1), (c)(2). A plain reading of the defiant trespass statute indicates that it applies when a defendant "enters or remains" in a place at which he knows that he is not licensed or privileged to be present. 18 Pa.C.S. § 3503(b)(1). The statute would thus apply to situations where stores bar a person from reentering their establishments and the person does so anyway knowing that they were told that they were not permitted to return. A retail store may be open to the public but a person's license or privilege to enter that privately-owned property may be revoked by the store's owner or operator on account of the actor's failure to comply with the lawful conditions

- 10 -

imposed on accessing and remaining at the property. Appellant fails to point to any legal support for his claim and our independent review fails to uncover any.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/09/2023