**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KIMBERLY A. STRUBLE | : | |
| | : | |
| Appellant | : | No. 410 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 14, 2024
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-SA-0000055-2023

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                       **FILED: April 8, 2025**

Kimberly A. Struble ("Struble") appeals from the judgment of sentence imposed following her conviction for the summary offense of defiant trespass.[1] We affirm.

For several years, Struble and her neighbors, Carolyn Anne Herdman-Fisher (hereinafter "Ms. Fisher") and her mother, Barbara Anne Herdman ("Mrs. Herdman"), had an ongoing dispute over their shared property line, with the neighbors alleging that Struble was trespassing.  In 2023, police issued a citation to Struble for the summary offense of defiant trespass concerning an incident which occurred on August 11, 2023.  The magisterial district court found Struble guilty of the charge and imposed costs and fines. Struble appealed the summary conviction to the court of common pleas, which

_____

[1] **See** 18 Pa.C.S.A. § 3503(b)(1)(ii).

conducted a trial *de novo*. The trial court summarized the evidence presented at the trial *de novo*, as follows:

> [Ms. Fisher] testified that since 2013 or 2014, she and [her mother] own property located at 217 Leon Street in Southmont Borough, to the immediate left of property owned by [Struble], 219 Leon Street. [*See*] N.T. 3/14/24[, at] 4-6[,] 11. In 2020, 2021, and most recently, on August 11, 2023, Ms. Fisher and her mother, through legal counsel, sent [Struble] letters directing [her] to stay off of their property. [*See id*. at] 6-9, and [Exhibit] A.
>
> Additionally, Ms., Fisher testified as to two security cameras on her property, one being on the corner of the attached garage, which is angled toward the street and her property. [*See id*. at] 11, 13[,] 17-19. On August 11, 2023, at 12:10 p.m., shortly after receiving Ms. Fisher's cease and desist letter, Ms. Fisher's video surveillance captured [Struble] raising both middle fingers to the camera. [*See id*. at] 9, 15[,] 19, and [Exhibits] D and F. Additional video/audio footage from a camera mounted on the back of Ms. Fisher's garage captured [Struble] walking toward the rear alley while indicating, according to Ms. Fisher, "[t]hat this is all mine, and she marches up the property line identifying that she understands where the property line is and she can go there any time she effing wants to." [*Id*. at] 22 and [Exhibit] E. As depicted in a still frame photograph captured from the video surveillance, Ms. Fisher testified that [Struble] came onto her property. [*See id*. at] 25 and [Exhibit] D. Finally, Ms. Fisher testified as to having a "no trespassing" sign posted in the window of her house. [*See id*. at] 17 and [Exhibit] D. Ms. Fisher also detailed the placement of an orange property line stake between, her property and [Struble's], which was flagged by a surveyor. [*See id*. at] 14 and [Exhibit] C.
>
> On cross-examination, Ms. Fisher was shown various defense exhibits depicting a fence between the properties. On re-direct, as to the location of the fence, and given the close proximity of the houses, Ms. Fisher clarified as to her obtaining a variance from Southmont Borough's three-foot setback requirement to permit her installation of the fence directly on the property line. [*See id*. at] 40-41. Ms. Fisher noted that Milkie's ultimately installed the fence in accordance with survey stakes and ". . . six inches offset the property line on our property," to

compensate for the six-inch. concrete footers. [**See id**. at] 41-43. Thereafter, Ms. Fisher was questioned regarding Exhibits depicting her yard on the date of [Struble's] alleged August 2023 trespass, prior to the installation of the fence, *i.e.*, [Exhibit] D, as well as regarding exhibits post-installation, *i.e.*, [Exhibits] 6 and 7. [**See id**. at] 43-45. Ms. Fisher noted the location of vegetation in the various exhibits, as well as the placement of a "firebox." **Id**. Ultimately, as to the still frame photograph, Ms. Fisher concluded that same depicted [Struble] entering her property. **Id**. at 45-46.

Following the Commonwealth's case in chief, the defense presented testimony from [Struble] and her son, Evan Gretok, who resides with [Struble]. Ultimately, he testified that the hosta plant depicted in [Exhibit] D is actually on [Struble's] property, but that "[t]he perspective is distorted by the angle of the camera." [**Id**. at] 55-56. On cross-examination, Mr. Gretok agreed that the "wooden box" depicted in [Exhibit] 13 is on the Herdman-Fisher property, and is "inches in" from the fence. [**Id**. at] 58.

[Struble] testified that she and Ms. Fisher have never gotten along. [**Id**. at] 61. As to [Exhibit] D, [Struble] stated that same depicts that both she and the hosta plant are on her property. [**Id**. at] 61-62. [Struble] testified similarly to her son that the camera picture is "totally distorted." [**Id**. at] 64. When questioned as to whether she believes that the fence is six inches off the property line, [Struble] responded "[i]t might be in the front but it's not in the back." [**Id**. at] 65. When later asked the same question, [Struble] replied, "I think in the back of the property, it could be because it's set off the sidewalk but it's not in the front at all," and then stated belief that the fence in the front is on her property and that she "will get it checked." [**Id**. at] 67.

[Struble] next indicated that ". . . the day that I got this trespassing charge . . . is the day that I put up the purple inflatable guy and that's what [Ms. Fisher] is really mad about. . . . I've never gone down her driveway. Ever. The only time I've been. in Mrs. Herdman's driveway was to shovel it. . . . I've shoveled that, driveway many times." [**Id**. at] 67-68. On cross-examination, [Struble] explained that in response to Mrs. Herdman installing additional cameras on her garage that "beeped constantly," and that she had to listen to for a month and a half,

- 3 -

[Struble] ". . . put up the purple inflatable guy to set off the alarm the whole time." [**Id**. at] 75-76.

Trial Court Opinion, 5/8/24, at 3-6 (unnecessary capitalization omitted).

At the conclusion of the trial *de novo*, the trial court found Struble guilty of defiant trespass and imposed costs and fines. Struble filed a timely notice of appeal and both she and the trial court complied with Pa.R.A.P. 1925.

Struble raises the following issue for our review: "whether the court erred in finding . . . Struble guilty of criminal trespass because assuming arguendo she went onto her neighbor's property the incursion was *de minimis*." Struble's Brief at 4 (unnecessary capitalization omitted).

We review a trial court's decision not to characterize an appellant's conduct as *de minimis* for an abuse of discretion. **See Commonwealth v. Toomer**, 159 A.3d 956, 959 (Pa. Super. 2017). An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will. **See id**.

Section 312 of the Crimes Code pertains to *de minimis* infractions and provides, in relevant part, as follows:

(a) General rule.--The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was

infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a). The function of section 312 is to remove petty infractions from the reach of the criminal law. *See Commonwealth v. Moll*, 543 A.2d 1221, 1226 (Pa. Super. 1998). However, an offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society, in fact, occurs. *See Commonwealth v. Moses*, 504 A.2d 330 (Pa. Super. 1986).

Pennsylvania law defines a "defiant trespasser," in relevant part, as follows:

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

* * * *

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders.

18 Pa.C.S.A. § 3503(b)(1)(ii). The purpose of the criminal trespass statute is to prevent unlawful intrusion onto real property or remainder thereon or to prevent unlawful breaches of the peace relating to realty. *See Commonwealth v. White*, 492 A.2d 32, 36 (Pa. Super. 1985).

Struble concedes that, given the trial court's credibility determinations, she cannot maintain an argument that she did not trespass or that her trespass onto the Fisher/Herdman property was a good faith mistake. Accordingly, she presents the argument that her trespass onto the neighbors' property was *de minimis* because no one was in the home at the time of the trespass, no members of the general public were present when she walked on to the Fisher/Herdman property, the trespass was brief, and she caused no damage to the property. Struble points out that, as depicted by the video, she walked around the hosta plant for a few seconds and then she returned to her own property while extending both of her middle fingers. Struble indicates that she understands the trial court's focus on the use of her middle fingers in its opinion, but nevertheless claims that such focus misses the point of the trespass statute. Struble insists that this "ongoing conflict between neighbors" is "basically a civil cause of action" for which the use of the criminal process is unjust. Struble's brief at 10-11.

The trial court considered Struble's issue and determined that it lacked merit. The trial court reasoned:

> The record reveals that [Struble] raised this [*de minimis*] argument . . . at the close of the Commonwealth's case in chief . . .. Specifically, defense counsel articulated:
>
> > This really is just bad neighbors here and neighbors that just don't like each other. And what we have here is we have the Commonwealth picking a side in a neighbor dispute. This should be on Neighbor Wars, not here in the court of common pleas. We should be

- 6 -

-- we should be poking fun at these people and saying, oh, my God, how petty this is and things.

N.T.[,] 3/14/24[,] at [] 48.

In response, the Commonwealth proffered:

Your Honor, the Commonwealth believes we have indicated and provided enough evidence, frankly, to support convictions for trespass. To argue it's *de minimus*, I think given the location of the box, which is clearly on Ms. Fisher's property, in front of shrubs that are clearly on Ms. Fisher's property. The vegetation that was growing from Ms. Struble's property onto Ms. Fisher's, Ms. Struble is clearly to the right of that. And the picture that is clearly showing Ms. Fisher's property. So[,] to say *de minimus*, one, the Commonwealth disagrees with that assertion. Two; the Commonwealth has, frankly, in our opinion, met our burden for a conviction. And[,] if we want to talk about being neighborly, walking into a camera and giving your neighbor the finger is anything but neighborly so that's a little bit of a hollow statement. And[,] perhaps if people aren't throwing each other the finger, maybe she would have felt differently but she doesn't. The Commonwealth is not picking sides. Frankly, the evidence presented, it's clear that there was a trespass after three separate notices, one of which was received within two hours of this infraction. [Struble is] clearly thumbing her nose at Ms. Fisher and, her mother's property rights. That is exactly what the Commonwealth has a duty to protect. . . .

N.T.[,] 3/14/24[, at] 49-50.

We believe that the Commonwealth's argument succinctly and appropriately addresses why [Struble's] assertion must fail, and adopt same as our analysis. Additionally, because the record does not reflect emotions, at hearing, the court observed the demeanor of the witnesses and can attest to the acrimonious nature of their neighborly relations. As for testimonial evidence, [Struble] unequivocally testified that she and Ms. Fisher have never gotten along. She also testified, at length, as to placing the "purple, inflatable guy" at the property line out of spite. To

- 7 -

contend that her actions. did not cause harm to Ms. Herdman and Ms. Fisher, is most certainly a fallacy. Thus, we find that [Struble's *de minimis*] argument lacks merit.

Trial Court Opinion, 5/8/24, at 8-9 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in reaching its determination that Struble's violation of section 3503(b) was not *de minimis*. As the record reflects, a" no trespassing" sign was fully visible to Struble, and she had been warned by letters sent through Ms. Fisher and Mrs. Herdman's legal counsel in 2020, 2021, and 2023 to cease and desist from trespassing on the Fisher/Herdman property. Moreover, the record reflects that Struble's continued trespasses were neither inadvertent nor harmless. Instead, they were intended to offend, aggravate, and provoke further dissention and disruption, which they did. Thus, it is clear that Struble's conduct caused precisely the harm that section 3503(b) seeks to prevent, including unlawful intrusions onto real property and unlawful breaches of the peace relating to realty. ***See White***, 492 A.2d at 36. Therefore, as we discern no abuse its discretion by the trial court in declining to find that Struble's violation of section 3503(b) was *de minimis*, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 04/8/2025